## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**ANTON NELSON JOSHUA,**
**#1747915,**

      **Petitioner,**

**v.**               **ACTION NO.  2:22-cv-439**

**HAROLD W. CLARKE,**

      **Respondent.**

### <u>REPORT AND RECOMMENDATION</u>

Pro se Petitioner Anton Nelson Joshua ("Joshua" or "Petitioner") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for attempted robbery, use of a firearm in commission of a felony, conspiracy, and aggravated malicious wounding.  (ECF No. 1).  Specifically, Petitioner alleges that these convictions were improper because he was denied his Sixth Amendment right to effective assistance of counsel, and because the trial court committed plain error in violation of the Sixth and Fourteenth Amendments.  Respondent Harold W. Clarke ("Respondent") moves to dismiss the Petition, (ECF No. 8), arguing that one of Petitioner's three ineffective assistance of counsel claims and his plain error claim are procedurally defaulted, while Petitioner's remaining two ineffective assistance of counsel claims must be dismissed under the standard set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Along with the motion, Respondent provided the notice to pro se parties required by Local Rule 7(K) and the Fourth Circuit's decision in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  Because Petitioner's plain error claim and one of his ineffective assistance of counsel claims are procedurally defaulted, and the state habeas court's decision regarding his remaining two claims

does not run afoul of the AEDPA standard set forth in 28 U.S.C. § 2254(d), this Report recommends the court grant Respondent's motion to dismiss.

## I.  **FACTUAL AND PROCEDURAL HISTORY**

Petitioner's arguments in this court do not require a complete review of the history of his case. However, the factual and procedural background, as relevant to the instant petition, is outlined below. When reviewing Petitioner's state habeas claims, the Supreme Court of Virginia summarized the evidence in the record as follows:

> Petitioner and five others conspired to rob [Federico] Roundtree of his guns and debit card. Roundtree lived on the second story of an apartment building. His door was located near an interior stairwell, which led to a landing area located near the building's front door. Some steps outside the front door led to a sidewalk, which abutted the parking lot. After obtaining guns from petitioner's home and another conspirator's home, petitioner and his companions divided into groups of three. One group (consisting of Maurice Walters, Sean Patterson, and Marcus Hamberry) would go to Roundtree's apartment, make Roundtree and his guests feel comfortable by smoking marijuana with them, and locate Roundtree's guns and debit card inside the apartment. Meanwhile, the other group (consisting of petitioner, Marquel Leary, and Casheon Jones) would wait outside the apartment building until Walters sent a text message signaling them to come upstairs with guns drawn.
>
> The conspirators drove to Roundtree's neighborhood and parked outside a nearby apartment building . . . . Walters, Patterson, and Hamberry walked to Roundtree's apartment, passing three men who were leaving the apartment building. One of these men, Taiwon Simon, accompanied Walters, Patterson, and Hamberry to Roundtree's apartment. Another, Brandon Wright, walked behind Roundtree's apartment building, where he saw petitioner, Leary, and Jones, who were all dressed in black. Wright called Roundtree to alert him of a potential threat.
>
> Inside Roundtree's apartment, Walters located a rifle and revolver that he believed Roundtree had stolen from him. Walters sent petitioner a text message to "come," the signal to proceed with the robbery. However, Roundtree went to the window, looked outside, said that he had "seen" somebody, and yelled, "[T]hey're here," prompting Walters to send petitioner a second text message to

2

"pause." Roundtree and Simon loaded their guns and headed for the stairwell outside the apartment.

During the ensuing altercation, Simon suffered a fatal gunshot wound to the head. His body was found on the street between Roundtree's apartment building and the next building. In addition, Roundtree was shot in the leg, and Leary was shot in the stomach. The police recovered eleven nine-millimeter cartridge casings and three nine-millimeter bullets, including one that was removed from Simon's brain during his autopsy, and the police subsequently found a discarded nine-millimeter pistol in Roundtree's apartment complex. The evidence showed that Leary fired this pistol and that it ejected all the nine-millimeter cartridge casings and bullets. Commonwealth's trial exhibit 34, a photograph depicting evidence markers in the area outside Roundtree's apartment building, showed three of the nine-millimeter cartridge casings landed in the parking lot close to the sidewalk and the steps leading to the entrance of Roundtree's apartment building.

In addition, Commonwealth's trial exhibit 53, a series of pictures taken from inside Roundtree's apartment building, included a picture of a nine-millimeter cartridge casing on the floor of the landing, near the front door of the building, as well as pictures of blood splattered on the wall and stairs leading up to and inside Roundtree's apartment. The police also found a bullet hole in the ceiling of the second-floor hallway. An officer tracked the bullet's probable trajectory and determined it traveled upward and exited through a hole in the attic.

The Commonwealth alleged petitioner was responsible for the first-degree felony murder of Simon, the aggravated malicious wounding of Roundtree, and the other charged offenses under a concert of action theory as a principal in the second degree.

Resp't's Br., Ex. 7 (ECF No. 10-7, at 1–3).[1]

A.   **Trial Proceedings**

Petitioner's trial in the Circuit Court for Virginia Beach began on February 7, 2018. In addition to the factual summary above, the Supreme Court of Virginia also explained the evidence at trial, as reflected in the record:

---

[1] The court cites exhibits from Respondent's brief out of convenience, but has reviewed the state court record to confirm their accuracy.

At trial, Walters, Patterson, and Hamberry testified for the Commonwealth. According to Patterson, as Roundtree and Simon were loading their guns, petitioner and Leary could be heard talking outside. Patterson could not understand what they said, but he heard them come up the stairs. Patterson then heard at least two sets of footsteps running down the stairs before Roundtree opened the apartment door. Simon left first, followed by Roundtree. Patterson heard several gunshots, and Roundtree returned with a wound in his leg. Walters testified he took some bullets from Roundtree's table and fled the apartment, and Patterson testified Walters also grabbed Roundtree's revolver from Roundtree before leaving. Hamberry testified that, immediately before the gunshots began, he heard Roundtree talking to someone. Hamberry also saw Roundtree point his gun, although he could not see anything else from his vantage point. Hamberry testified Roundtree fired first but there were at least ten shots. Hamberry recalled there was blood on the wall of the stairway as he left Roundtree's apartment building.

In addition, pursuant to an agreement of the parties, Detective James Marafka recounted Roundtree's statements made during a debriefing. When asked whether Roundtree said Leary fired first, Marafka testified, "The gun was brandished. [Roundtree] stated that the gun was pulled out on him and he fired, hitting Mr. Leary once, and as he was retreating, struck him." According to Marafka, Roundtree admitted he fired his gun one time and fled to his apartment with a leg wound. Marafka did not relate any statements Roundtree made describing where Leary or Roundtree were positioned when Leary brandished the gun.

Id. at 3–4.

As noted above, Detective Marafka's hearsay testimony regarding Roundtree's debriefing statements was admitted into evidence pursuant to an agreement of the parties. Specifically, the parties stipulated that Marafka's testimony "was admissible as a declaration against penal interest by Roundtree, a convicted felon"—which is a hearsay exception available when the declarant is deemed to be unavailable as a witness. Id. at 4, n.1; see Va. R. Sup. Ct. 2:804(b)(3); see also Trial Tr. 611:8–614:4. Prior to Detective Marafka's testimony, Roundtree had appeared at trial and testified, but said he did not remember the night of the robbery, speaking with Detective Marafka, or making any statements about his involvement in the shooting to law enforcement. Trial Tr.

383:1–387:7, 395:4–400:22.  The parties agreed, without obtaining a definitive ruling from the court, that Roundtree's memory loss classified him as an unavailable witness under controlling caselaw.  Id. at 611:8–614:4.

Following the close of evidence, the government requested a jury instruction on the "castle doctrine," which stated that, "[w]hen a party assaults a homeowner in his home or curtilage leading up to his home, the homeowner has the right to use whatever force necessary to repel the aggressor to include the take of a life.  Such homeowner has no obligation to retreat."  Id. at 1.  After a brief inquiry into the necessity of the instruction, the court issued it without objection.  Id. at 4; see Trial Tr. 688:19–689:12.

At the conclusion of the trial, Petitioner was convicted of attempted robbery, use of a firearm in the commission of a felony, conspiracy, and aggravated malicious wounding.  Resp't's Br. Supp. Mot. Dismiss & Rule 5 Answer ("Resp't's Br."), Ex. 1 (ECF No. 10-1, at 1–2).  He was sentenced to twenty-nine years imprisonment.  Id. at 2–3.

**B.    State Court Appeals**

On July 18, 2018, Joshua appealed his convictions to the Court of Appeals of Virginia. Resp't's Br., Ex. 2 (ECF No. 10-2, at 2–19).  He argued that the evidence in the record was insufficient to prove that he engaged in a direct act towards the commission of the robbery or that Roundtree suffered a permanent and significant physical impairment.  Id. at 6–7.  On December 17, 2018, the Court of Appeals denied his appeal in a per curiam opinion, finding that his claims were procedurally barred because he failed to preserve them for appeal, and that he had not met his burden to show that this failure should be excused under the "ends of justice" exception contained in Rule 5A:18 of the Rules of the Supreme Court of Virginia.  Id. at 29–35. Joshua then requested reconsideration by a three-judge panel, which the Court of Appeals denied on January

28, 2019. See Resp't's Br., Ex. 3 (ECF No. 10-3, at 2–3).

On December 5, 2019, Joshua filed a petition for appeal in the Supreme Court of Virginia.[2] Id. at 16–36. He argued that the Court of Appeals erred in refusing to apply the ends of justice exception given that the evidence in the record was insufficient to prove that he engaged in a direct act towards the commission of the robbery or that Roundtree suffered a permanent and significant physical impairment. Id. at 21. The Supreme Court refused Joshua's petition for appeal on August 14, 2020. Id. at 39.

## C.     State Habeas Petition

On January 12, 2021, Joshua filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. Resp't's Br., Ex. 4 (ECF No. 10-4, at 2–19). He raised three claims: (1) ineffective assistance of counsel due to his trial counsel's failure to object to the jury instruction on the castle doctrine; (2) ineffective assistance of counsel due to his trial counsel's failure to request a jury instruction for malicious or unlawful wounding; and (3) plain error by the trial court in allowing the prosecution to introduce Roundtree's debriefing statement into evidence as a statement of an unavailable witness, given that Roundtree was present at trial, testified, and denied having made the statement and the accuracy of its contents. Id. at 7–8, 11–15.

The Supreme Court of Virginia dismissed Joshua's habeas petition on December 6, 2021. Resp't's Br., Ex. 7 (ECF No. 10-7). In its written order, the Supreme Court first considered Petitioner's claim regarding the castle doctrine jury instruction, or "Instruction 20." Id. at 1.

---

[2] Petitioner originally filed his petition for appeal with the Supreme Court of Virginia on February 26, 2019. Resp't's Br., Ex. 3 (ECF No. 10-3, at 2–3). Following oral argument, the Supreme Court rejected his appeal on August 27, 2019, finding that Petitioner's claims did not address the Court of Appeals' findings, ruling, or failure to rule on issues in his case. Id. at 3, 6. However, Petitioner's appellate counsel moved for a delayed appeal, arguing that the errors identified in the Supreme Court's dismissal order were due to Petitioner's trial counsel misstating Petitioner's claims. Id. at 2–3, 8–10. On November 12, 2019, the Supreme Court granted Petitioner's motion, allowing him to file a new petition for appeal. Id. at 15.

Petitioner argued that Instruction 20 was improper and should have been objected to by his trial counsel because Roundtree "started a new confrontation and unequivocally fired the first shot after petitioner and his co-conspirators abandoned their conspiracy to rob him." Id. (cleaned up). Consequently, Petitioner asserted, "Roundtree was not attacked within his own home and therefore was not free from fault in bringing on the combat." Id. (cleaned up).

The Supreme Court found that this ineffective assistance of counsel claim "satisfied neither the performance nor the prejudice prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 688, 687 (1984)." Id. (cleaned up). In reaching that conclusion, the Supreme Court reasoned that

> under the circumstances of this case, and based on the evidence discussed above, counsel could reasonably have determined the Commonwealth satisfied the requirement of presenting "more than a scintilla of evidence" to support Instruction 20. Although the evidence describing the positions of Roundtree and Leary was somewhat ambiguous and debatable, there was evidence that Roundtree and Leary encountered one another in or near the stairwell of Roundtree's apartment building and Leary fired one shot while inside the building, even if Leary fired more shots from the nearby parking lot. Therefore, given the relatively low evidentiary standard for issuing a jury instruction, petitioner fails to overcome the "strong presumption" that counsel's decision to forgo an objection to Instruction 20 fell "within the wide range of reasonable professional assistance."

Id. at 4 (cleaned up).

Regardless, the Supreme Court also determined that Petitioner "fail[ed] to demonstrate the reasonable probability of a different outcome had Instruction 20 not been given. Id. at 5. The court explained that

> petitioner was one of six men who conspired to commit armed robbery against Roundtree and provided one of the guns to effectuate their plan. Petitioner agreed to receive Walters' message to commence the armed robbery, and, when Walters sent the signal to proceed, at least two members of petitioner's team entered the

> stairwell to Roundtree's apartment building before Walters sent the second message to "pause." Contrary to petitioner's assertion otherwise, pausing a planned armed robbery does not constitute abandonment of the criminal enterprise. Moreover, after Walters sent the message to "pause," Leary brandished a gun at Roundtree and shot him in the leg, and other conspirators took items, including a gun Roundtree possessed, after Roundtree retreated to his apartment. Accordingly, although the robbery scheme did not go as the conspirators had planned, it was nonetheless consummated with petitioner's assistance. Petitioner, as a principal in the second degree, "is held as culpable" as the perpetrators of those acts. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Id. (cleaned up).

Next, the Supreme Court addressed Petitioner's claim regarding his counsel's failure to request jury instructions on unlawful or malicious wounding. Id. at 5–7. With respect to unlawful wounding, Petitioner argued that his trial counsel should have requested an instruction because "no evidence proved Leary intended to shoot Roundtree or that petitioner was aware of such intent." Id. at 5. With respect to malicious wounding, Petitioner asserted that his trial counsel should have requested an instruction because malicious wounding is a lesser included offense of the aggravated malicious wounding charge on which Petitioner was convicted. Id. at 6.

The Supreme Court found that, with respect to both instructions, Petitioner's ineffective assistance of counsel claim "satisfied neither the performance nor the prejudice prong of the two-part test enunciated in Strickland." Id. Regarding unlawful wounding, the Supreme Court stated that "the presence of malice separates malicious wounding from unlawful wounding." Id. (citing Dominguez v. Pruett, 287 Va. 434, 438 (2014)). The court then reasoned that

> the record, including the trial transcript, demonstrates six men, including petitioner and Leary, conspired to commit an armed robbery against Roundtree, Leary brandished a gun at Roundtree, and Roundtree was shot in the leg. Counsel could reasonably have

> determined there was ample evidence of malice, there was no evidence the shooting was committed without malice, and, therefore, any attempt to request an unlawful wounding instruction would have been futile. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Id. (cleaned up).

Regarding malicious wounding, the Supreme Court explained that aggravated malicious wounding—the charge of which Petitioner was ultimately convicted—"occurs when the defendant causes the victim severe injury and permanent and significant physical impairment." Id. (citing Code § 18.2-51.2 and Code § 51.4-40.1). The Supreme Court then opined that

> the record, including the trial transcript and the Commonwealth's trial exhibit 33, demonstrates Hamberry testified the gunshot wound to Roundtree's leg was so sever that "whole leg was split open" and it looked like the leg had been "whacked" by "a sword." Further, pictures of Roundtree, which were admitted at trial, showed a visible scar on the posterior side of the leg and a long and deep wound on the interior side of the leg. Counsel could reasonably have determined the extensive scarring to Roundtree's leg constituted a permanent and significant physical impairment, and that any attempt to instruct the jury on the lesser-included offense of malicious wounding would have been futile. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Id. at 6–7 (cleaned up).

Finally, the Supreme Court considered Petitioner's plain error claim regarding the admission of Roundtree's debriefing statement into evidence. Id. at 7. The court did not reach the merits of this claim, finding that it was procedurally barred and not cognizable in a petition for a writ of habeas corpus under Slayton v. Parrigan, 215 Va. 27, 29 (1974) because it concerned a non-jurisdictional issue that could have been raised at trial and on direct appeal. Id.

**D.     Current Federal Habeas Petition**

On September 27, 2022, Joshua filed his habeas petition in this court. (ECF No. 1). In his federal petition, Joshua raises three claims: (1) ineffective assistance of counsel due to his trial counsel's failure to object to the castle doctrine jury instruction ("Ground One"); (2) ineffective assistance of counsel due to his trial counsel's failure to request a jury instruction for malicious or unlawful wounding ("Ground Two"); and (3) plain error by the trial court in allowing the prosecution to introduce Roundtree's debriefing statement into evidence as a statement of an unavailable witness, given that Roundtree was present at trial, testified, and denied having made the statement and the accuracy of its contents ("Ground Three"). Id. at 5, 7–8, 16–20. Respondent alleges that, in the brief filed in support of the petition, Joshua brings an additional claim— ineffective assistance of counsel due to his trial counsel's failure to object to the prosecution's use of the Roundtree debriefing statement ("Ground Four"). See Resp't's Br. (ECF No. 10, at 3) (citing Pet'r's Br. Supp. Pet. (ECF No. 1-1, at 4)). It is unclear to the court whether Joshua seeks to assert this claim, but to the extent he does, it is considered below. Petitioner seeks to have his convictions vacated on account of the errors alleged in his petition. Pet. (ECF No. 1, at 15, 20).

On December 19, 2022, Respondent filed a Rule 5 Answer, (ECF No. 9), and Motion to Dismiss, (ECF No. 8), arguing that Ground One and Ground Two must be dismissed under AEDPA's deferential standard of review, while Ground Three and Ground Four are procedurally defaulted. Resp't's Br. (ECF No. 10, at 7–11, 14–22).[3]  On January 9, 2023, Petitioner filed a

---

[3] Petitioner filed a motion on January 9, 2023, arguing that Respondent's Rule 5 Answer, Motion to Dismiss, and accompanying documents were filed 31 days after November 18, 2022, despite having been ordered on that date to file their answer within 30 days. (ECF No. 12).  Petitioner contends that, on the basis of that tardiness, the court should decide his petition without considering Respondent's filings. Id. Petitioner is correct that 30 days from November 18, 2022, is December 18, 2022, and that Respondent's documents were filed one day afterwards.  However, December 18, 2022, was a Sunday and the court was not operating on that date.  See Fed. R. Civ. P. 6(a)(1)(C) (explaining that, for the purposes of computing a time period stated in a court order, "if the last day [of the period] is a Saturday, Sunday, or legal holiday,

response opposing the motion to dismiss. (ECF No. 13).

## II.    ANALYSIS

Habeas petitions filed pursuant to 28 U.S.C. § 2254 challenge a state's custody over a petitioner on the grounds that such custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In this case, Petitioner contends that he was deprived of his right to effective assistance of counsel under the Sixth Amendment, and that the trial court committed plain error in violation of the Sixth and Fourteenth Amendments. After considering these claims and Respondent's arguments, this Report concludes Ground One and Ground Two are barred from federal review because Petitioner has not satisfied the doubly deferential standard necessary to obtain review of these Strickland claims under § 2254(d). Additionally, this Report concludes that Ground Three and Ground Four are procedurally defaulted because Petitioner failed to exhaust his remedies with the state courts and has not alleged sufficient grounds to excuse the default. This Report thus recommends granting Respondent's motion and dismissing Joshua's petition for writ of habeas corpus under 28 U.S.C. § 2254.

**A.    Petitioner's Claims Under Ground One and Ground Two Fail Because the State Court's Holding that He Cannot Satisfy Strickland v. Washington on Either Claim Was Reasonable.**

Under § 2254(d) of AEDPA, a federal court may not grant relief on any claim that a state court adjudicated on the merits[4] unless the decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an

---

the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Respondent promptly filed an Answer and Motion to Dismiss when the court opened on Monday, December 19, 2022. See id. As such, Petitioner's motion, (ECF No. 12), is **DENIED** and the court will consider Respondent's filings when deciding the petition and Respondent's Motion to Dismiss.

[4] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011).

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A state court's adjudication is contrary to clearly established federal law if the court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. Factual determinations made by a state court, however, are "presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Hill v. Ozmint, 339 F.3d 187, 194 (4th Cir. 2003).

In Ground One of his Petition, Joshua alleges ineffective assistance of counsel due to his trial counsel's failure to object to the castle doctrine jury instruction. Pet. (ECF No. 1, at 5, 16–19). In Ground Two of his Petition, Joshua alleges ineffective assistance of counsel due to his trial counsel's failure to request a jury instruction for malicious or unlawful wounding. Id. at 7, 19. Petitioner squarely presented these claims in his state habeas petition. Resp't's Br., Ex. 4 (ECF No. 10-4, at 7, 11–14). The Supreme Court of Virginia dismissed both claims, finding that neither claim could satisfy the performance or prejudice prong of the Strickland test. Resp't's Br., Ex. 7 (ECF No. 10-7). Because of the Supreme Court issued a merits-based decisions on those claims, Joshua must overcome the standard set forth in § 2254(d) to obtain relief in this court. At this stage, "[t]he focus of federal court review is now the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997).

The Supreme Court of Virginia evaluated Petitioner's ineffective assistance of counsel claims under <u>Strickland</u>. The <u>Strickland</u> test has two parts—the "performance" and "prejudice" prongs—both of which must be satisfied. <u>See</u> <u>Moore v. Stirling</u>, 952 F.3d 174, 185–86 (4th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 680 (2020) (citing <u>Strickland</u>, 466 U.S. at 687–96). The "performance" prong of the test requires that "counsel's representation fell below an objective standard of reasonableness" such that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687, 688. The "prejudice" prong requires that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. The prongs "are separate and distinct elements," and the absence of either is fatal to an ineffectiveness claim. <u>Spencer v. Murray</u>, 18 F.3d 229, 232–33 (4th Cir. 1994).

However, because the state court already concluded that Petitioner cannot satisfy either prong, Joshua must meet an increased burden under § 2254(d):

> The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Premo v. Moore</u>, 562 U.S. 115, 122–23 (2011) (quoting <u>Harrington</u>, 562 U.S. 86, 105 (2011)) (internal citations omitted); <u>cf.</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). The Fourth Circuit has called this "double deference," requiring "deference to the state court judgment granting deference

to trial counsel's performance." Burr v. Lassiter, 513 F. App'x 327, 340 (4th Cir. 2013) (unpublished). Thus, to prevail in this habeas action, Joshua must plausibly allege that there is no reasonable argument that his trial counsel's advice was constitutionally effective. See Harrington, 562 U.S. at 103 (requiring the state court ruling be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). Under this standard, Joshua cannot plausibly allege claims under Ground One or Ground Two.

    **1.**     **The state court reasonably assessed counsel's actions under Strickland's performance and prejudice prong for Petitioner's claim under Ground One.**

        **a.**     **Performance Prong**

Joshua has not plausibly alleged that the state court acted unreasonably in finding that his counsel's performance did not fall below "an objective standard of reasonableness" in relation to his claim under Ground One. Strickland, 466 U.S. at 688; see also 28 U.S.C. § 2254(d)(2). The difficult burden is on Petitioner to show that counsel's performance was deficient because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. In fact, there is "a heavy measure of deference to counsel's judgments." Id. at 691; see also Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993) (finding that "[a] lawyer's performance is entitled to a strong presumption of reasonableness" (citing Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989)). The state court reasonably found that Joshua had not established the performance prong.

In this case, the state court found that counsel could reasonably have determined that Instruction 20 was well-supported, given "evidence that Roundtree and Leary encountered one another in or near the stairwell of Roundtree's apartment building and Leary fired one shot while inside the building." Resp't's Br., Ex. 7 (ECF No. 10-7, at 4). The state court explained this

evidence in great detail. The court noted that "Roundtree and Simon loaded their guns and headed for the stairwell outside the apartment" upon learning that Petitioner's group was approaching the building. Id. at 2. The court highlighted the testimony heard at trial, which included testimony from Patterson that, as Roundtree and Simon were loading their guns, he heard Petitioner and Leary talking outside and coming up the stairs outside the apartment. Id. at 3. Hamberry "recalled there was blood on the wall of the stairway as he left Roundtree's apartment building." Id. The court also addressed "Commonwealth's trial exhibit 53, a series of pictures taken from inside Roundtree's apartment building, [which] included a picture of a nine-millimeter cartridge casing on the floor of the landing, near the front door of the building, as well as pictures of blood splattered on the wall and stairs leading up to and inside Roundtree's apartment." Id. In light of this evidence and discussion, the state court's holding on this prong was reasonable.

### b.    Prejudice Prong

Similarly, there is no evidence to undermine the state court's conclusion that counsel's representation caused Joshua no discernable prejudice. The underlying inquiry is whether "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986); see also Strickland, 466 U.S. at 694 (defining "reasonable probability" as "a probability sufficient to undermine confidence in the outcome").

The state court found that Joshua "failed to demonstrate that counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different." Resp't's Br., Ex. 7 (ECF No. 10-7, at 5). In reaching this conclusion, the court emphasized the weight of the evidence against Petitioner, noting that he "conspired to commit armed robbery . . . provided one of the guns to effectuate [the] plan . . . ."

[and] agreed to receive Walters' message to commence the armed robbery." Id. It explained that, even though Leary brandished a gun and shot Roundtree and others took items from the apartment, Petitioner could be "held as culpable" for those acts as a principal in the second degree. Id. (citing Briley v. Commonwealth, 221 Va. 563, 573 (1980). The court also explained that Petitioner's defense of abandonment was not legally viable. Id. (citing Blevins v. Commonwealth, 209 Va. 622, 626 (1969). Because Strickland requires Petitioner to demonstrate that "the result of the proceeding would have been different" without counsel's conduct, and Petitioner has provided no explanation for why he believes he would have been able to overcome this evidence against him had his trial counsel objected to Instruction 20, the state court's holding on this prong was reasonable. Strickland, 466 U.S. at 694 (emphasis added).

2.      **The state court reasonably assessed counsel's actions under Strickland's performance and prejudice prong for Petitioner's claim under Ground Two.**

a.      **Performance Prong**

As with Ground One, Joshua has not plausibly alleged that the state court acted unreasonably in finding that his counsel's performance did not fall below "an objective standard of reasonableness" in relation to his claim Ground Two. Strickland, 466 U.S. at 688; see also 28 U.S.C. § 2254(d)(2). On this claim, the state court explained that the difference in unlawful wounding and malicious wounding is the presence of malice. Resp't's Br., Ex. 7 (ECF No. 10-7, at 6) (citing Dominguez, 287 Va. at 438 (2014)). It noted that the evidence in the record established that Petitioner "conspired to commit an armed robbery" in which a gun was brandished and Roundtree was shot in the leg. Id. The court concluded that, in light of this evidence, "[c]ounsel could reasonably have determined there was ample evidence of malice, there was no evidence the shooting was committed without malice, and, therefore, any attempt to request an unlawful wounding instruction would have been futile." Id.

A similar finding was made with respect to Petitioner's trial counsel's failure to request a malicious wounding instruction. The state court explained that "aggravated malicious wounding, as opposed to malicious wounding, occurs when the defendant causes the victim severe injury and permanent significant physical impairment." Id. (citing Code § 18.2-51.2 and Code § 51.4-40.1). It noted that evidence in the record established that "Hamberry testified the gunshot wound to Roundtree's leg was so severe that [Roundtree's] whole leg was split open and it looked like the leg had been whacked by a sword." Id. at 7 (cleaned up). The court also mentioned that "pictures of Roundtree, which were admitted at trial, showed a visible scar on the posterior side of the leg and a long and deep wound on the interior side of the leg." Id. On that basis, the court found that "[c]ounsel could reasonably have determined the extensive scarring to Roundtree's leg constituted a permanent and significant physical impairment, and that any attempt to instruct the jury on the lesser-included offense of malicious wounding would have been futile." Id. Given this strong evidence that the robbery was committed with malice and resulted in a significant and permanent physical injury to Roundtree, the state court reasonably held that counsel's performance did not fall outside the "heavy measure of deference" due counsel's judgments. Strickland, 466 U.S. at 691.

### b.   Prejudice Prong

Similarly, there is no evidence to undermine the state court's conclusion that counsel's representation caused Joshua no discernable prejudice. Relying on the same evidence and law it used to discuss the performance prong of Joshua's claim under Ground Two, the state court found that Petitioner failed to demonstrate that the result of the proceeding would have been different had his counsel requested a jury instruction on unlawful or malicious wounding. Id. at 6–7. As discussed above, the evidence against Petitioner is substantial, which suggests that counsel's

17

decision to not request these instructions was not outcome-determinative. Strickland requires Petitioner to demonstrate that "the result of the proceeding would have been different" without counsel's conduct. Strickland, 466 U.S. at 694 (emphasis added). Joshua has provided no reason why that would be the case here, and the state court's holding on this prong is not "so lacking in justification" as to be "an error well understood and comprehended in existing law." Harrington, 562 U.S. at 103.

**B.      Petitioner's Claim Under Ground Three is Defaulted.**

In his federal petition, Joshua alleges that the trial court committed plain error in violation of his rights under the Sixth and Fourteenth Amendments by allowing the government to introduce Roundtree's debriefing statement into evidence as a statement of an unavailable witness. Pet. (ECF No. 1, at 8, 19–20). This claim was presented to the Supreme Court of Virginia, which dismissed it as procedurally barred. Resp't's Br., Ex. 7 (ECF No. 10-7, at 7). Respondent argues that Ground Three is thus defaulted. Resp't's Br. (ECF No. 10, at 8–9).

"A habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and clearly and expressly denied on the independent, adequate state ground of procedural default." Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996) (citing Harris v. Reed, 489 U.S. 255, 263 (1989); Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). The Supreme Court of Virginia's decision in Slayton, under which the state court dismissed Petitioner's claim, "constitutes an adequate an independent state law ground for decision." Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (quoting Mu'Min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997)).

Failure to comply with state procedures prevents federal habeas review unless the petitioner can show cause to excuse the default and resulting prejudice. Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990) (citing Wainwright v. Sykes, 433 U.S. 72 (1997)). Cause

requires a showing "that some objective factor external to the defense impeded [Petitioner's] efforts to comply with the State's procedural rule[.]" <u>Wolfe v. Johnson</u>, 565 F.3d 140, 158 n.27 (4th Cir. 2009) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). Prejudice requires that the mistake "worked to [Petitioner's] <u>actual</u> and substantial disadvantage[.]" <u>Id.</u> (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)) (emphasis in original). However, Joshua has made no attempt to excuse his default or provide any evidence of resulting prejudice. Thus, Ground Three is barred from review in this court.

## C.     Petitioner's Claim Under Ground Four is Simultaneously Exhausted and Defaulted.

In the brief filed in support of his federal petition, Joshua alleges ineffective assistance of counsel due to his trial counsel's failure to object to the prosecution's use of the Roundtree debriefing statement. <u>See</u> Resp't's Br. (ECF No. 10, at 3) (citing Pet'r's Br. Supp. Pet. (ECF No. 1-1, at 4)). This claim was not presented to the Virginia state courts on direct appeal or in Petitioner's state habeas petition. Respondent argues that Ground Four is thus exhausted and defaulted. <u>Id.</u> at 8–9.

Before applying for federal habeas relief, a petitioner must first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1)(A). This requirement gives "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing . . . ." <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998). The prisoner must "invoke[] one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). Furthermore, "[e]xhaustion generally requires that the essential legal theories and factual allegations advanced in federal court be the same as those advanced at least once to the highest state court." <u>Pruett v. Thompson</u>, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), <u>aff'd</u>, 996 F.2d 1560

(4th Cir. 1993) (citing cases). The habeas petitioner bears the burden of proving that all claims are exhausted. Breard, 134 F.3d at 619 (citing Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994)). Joshua did not present Ground Four to the Virginia courts on appeal or in his state habeas petition but raises it for the first time now with this court.

A claim may be treated as exhausted if it clearly would be procedurally defaulted if presented in state court. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Joshua's Ground Four is procedurally defaulted because Virginia law prohibits successive petitions alleging grounds that were available when a petitioner first filed. Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition."). Joshua previously filed a state habeas petition, in which he did not raise Ground 4. See Resp't's Br., Ex. 4 (ECF No. 10-4, at 2–19). Virginia's bar on successive petitions bar would prevent him from raising it now. This rule is "an adequate and independent state-law ground for decision." Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) (citing cases). As a result, Ground Four is simultaneously exhausted and defaulted. Pruett, 771 F. Supp. at 1437.

As noted above, procedural default can be excused if the petitioner "is able to show just cause for his default and prejudice resulting therefrom." Bassette, 915 F.2d at 937 (citing Wainwright, 433 U.S. 72). However, Joshua has not shown cause or prejudice. Petitioner's Ground Four claim is thus procedurally barred from federal review.

### III.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss, (ECF No. 8), be GRANTED and that Joshua's petition for a writ of habeas corpus under 28 U.S.C. § 2254, (ECF No. 1), be DENIED and the case DISMISSED with prejudice.

## IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 27, 2023

21

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing was mailed this date to:

**Anton Nelson Joshua**
1747915
VA DOC Centralized Mail Distribution Center
3521 Woods Way
State Farm, VA 23610

A copy of the foregoing was provided electronically this date to:

**Rosemary Bourne**
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219

Fernando Galindo, Clerk

By_____E. Price_____
Deputy Clerk

_____June 27_____, 2023